## In re EISNER et al.

### (Circuit Court, S. D. New York. March 14, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—MALT EXTRACT—PROPRIETARY MEDICINES.

"Johann Hoff Malt Extract," a medicinal compound of many ingredients, made by a secret formula, and containing 12 per cent. malt extract, and entered for 15 years as a proprietary medicine, is dutiable as a proprietary medicine, under paragraph 75 of the tariff act of October 1, 1890, at 25 per cent. ad valorem, and not under paragraph 338, imposing a duty on "malt extract, fluid, * * * in bottles or jugs, 40 cents per gallon; solid or condensed, 40 per centum ad valorem." Ferguson v. Arthur, 6 Sup. Ct. Rep. 861, 117 U. S. 482, followed.

Appeal by the Importer from a Decision of the United States Board of General Appraisers affirming a decision of the collector of the port of New York. Reversed.

Dudley, Michener & Ray, for importer.

Thomas Greenwood, Asst. U. S. Atty., for collector.

COXE, District Judge. The appraisers found that the merchandise imported was a fluid malt extract dutiable at 40 cents per gallon, under paragraph 338 of the tariff of 1890, which is as follows:

"Malt extract, fluid, * * * in bottles or jugs, forty cents per gallon; solid or condensed, forty per centum ad valorem."

It is said that this is the first time the term "malt extract" ever appeared in a tariff act. The importer insists that it should have been classified under paragraph 75, which reads as follows:

"All medicinal preparations, including medicinal proprietary preparations, of which alcohol is not a component part, and not specially provided for in this act, twenty-five per centum ad valorem."

In approaching the question whether or not the importation is a fluid malt extract, care should be taken to guard against the impression, unfavorable to the appellant's contention, which is produced by the undisputed fact that the merchandise is imported as "Johann Hoff's Malt Extract," and that it is advertised, sold, labeled and even described in the protest by that name. If calling it "malt extract" makes it malt extract the appellant has no standing in court. But the question is, what is it? not what is it called? Keeping this distinction in mind the evidence in this court seems to establish the proposition that it is not the malt extract of commerce and not the article which the lawmakers must have had in mind when paragraph 338 was enacted. The Johann Hoff Malt Extract is a compound of many ingredients, made by a secret formula, consisting of herbs, roots, leaves, dextrine, water, hop extract and malt extract, but there is only 12 per cent. of the latter. It might with equal propriety be called a "hop extract," or by any one of its numerous ingredients. If this course had been adopted, and the compound had been known, for instance, as "Hoff's Herb Extract," it will hardly be contended that the presence of 12 per cent. of malt would make it dutiable under paragraph 338. Although some matters might, perhaps, have been made clearer by the proof, the court is satisfied that the merchandise in question was never known as a "malt extract" commercially, in the sense in which that word must be used as applicable to the tariff law. Of course this particular compound has long been known to the trade and commerce of this country, but it is thought that importers and large dealers would not understand the term "malt extract" to include Hoff's extract, and would not fill an order for malt extract by sending the Hoff compound. The very fact that its composition is unknown would prevent such a classification. That it is a medicinal proprietary preparation is not disputed, and it is not argued for the collector that it contains alcohol. It is thought, therefore, that paragraph 75 specifically describes it, and that the collector should have classified it under that paragraph.

It is not often that an authority is found which is an exact precedent for the case in hand. There are always some distinguishing facts, but the case of Ferguson v. Arthur, 117 U. S. 482, 6 Sup. Ct. Rep. 861, approaches much nearer than is usual to the facts of the present case. In principle the two cases are identical. "Henry's Calcined Magnesia" was held to be dutiable as a "proprietary medicine," although another paragraph assessed duty upon "magnesia, calcined, twelve cents per pound." Indeed, it would seem that the merchandise in the Ferguson Case was much nearer to "magnesia, calcined," than the merchandise here is to "malt extract, fluid." It was, in fact, calcined magnesia, but prepared by a secret formula, which gave it peculiar advantages. Here the merchandise in ques-

tion is not in a proper sense "malt extract" at all. It will be seen by the following comparison that every argument applicable to "Henry's Calcined Magnesia" applies with equal or greater force to "Hoff's Malt Extract:"

**Henry's Calcined Magnesia.**

It has been prepared by the same family, a firm of manufacturing chemists in Manchester, England, for the last one hundred years, and has a peculiar value in the market.

That the article in question is a medicinal preparation there can be no doubt. The circular sets forth its virtues as a remedy in disease, and calls it a "medicine."

It has a character of its own, distinct from the ordinary calcined magnesia, which must arise from the special mode of manufacture.

Henry's article is not the ordinary calcined magnesia, dutiable by the pound, but something is done to that ordinary calcined magnesia by the Henrys which, in connection with the manner in which it is put up and sent forth, makes it a proprietary medicine, although the base of it is magnesia calcined.

**Hoff's Malt Extract.**

It has been prepared by the same family, a firm of manufacturing chemists in Berlin, Germany, for the last twenty-five years, and over, and has a peculiar value in the market.

That the Hoff extract is a medicinal preparation there can be no doubt. The circulars and labels set forth its virtues as a remedy in disease, call it a "medicine," and recommend that it should be taken under the advice of a physician.

It has a character of its own, distinct from the ordinary malt extract, which arises from the special mode of manufacture and from the fact that only twelve per cent. of malt is used.

Hoff's article is not the ordinary malt extract dutiable by the gallon, but something is done to the small percentage of malt extract found there, together with the other ingredients, by Hoff, which, in connection with the manner in which it is put up and sent forth, makes it a proprietary medicine. The base of it is not shown to be malt extract.

The court does not lose sight of the distinctions pointed out by the counsel for the collector, based upon the changed language of the tariff, since the decision of the Ferguson Case; but it seems to the court, in view of the principle there enunciated and of the conceded facts that the article in question contains but 12 per cent. of malt extract, and is a proprietary medicine put up by a secret formula, that it is more appropriately assessed under paragraph 75 than under paragraph 338. Immutability of the law is a wise maxim of political economy which is too often lost sight of by the legislative power both state and national. Frequent alteration, whether by the legislature, or by those who interpret the law in the first instance, unsettles business and retards prosperity. By adopting a reasonable uniformity of construction the courts, as far as possible, should see to it that commerce is not vexed by unnecessary changes. For fifteen years the merchandise in question has entered our ports as a proprietary medicine. No reason exists for a change now.

The decision of the board is reversed.